UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LAMONDRE MOORE,

        Plaintiff,

        v.                                  Case No. 24-cv-1344

PATRICK J. MURPHY,
KELLY PELKY,
BRIAN CAHAK,
DEPARTMENT OF CORRECTIONS, and
JULIE LUDWIG,

        Defendant.

---

## SCREENING ORDER

---

Plaintiff LaMondre Moore, who is currently serving a state prison sentence at Redgranite Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On November 5, 2024, Moore paid the $405 civil case filing fee. This matter comes before the Court to screen the complaint, which the Court has jurisdiction to do in light of Moore's consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this Court.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or

malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

According to Moore, on July 3, 2024, he was examined by Dr. Patrick Murphy in his office with no one else present. Moore alleges that Dr. Murphy sexually assaulted him by groping his

genitals and unnecessarily viewing his naked body. Moore explains that he was scared to tell anyone about it because he was embarrassed and afraid and did not think anyone would believe him. Moore asserts that he began to have nightmares and now is back on medication so he can sleep at night. Dkt. No. 1 at 2.

Moore asserts that months after the incident, he contacted Health Services Manager Kelly Pelky and asked her if he could change doctors, but she said that policy did not allow him to change doctors. Moore explains that he wanted to change doctors because of the incident and that he had "complained to the HSUM about that matter." Moore asserts that he also talked to Warden Brian Cahak about changing his doctor, but the warden deferred to Pelky's decision. Dkt. No. 1 at 2.

### THE COURT'S ANALYSIS

To state a claim under the Eighth Amendment, a plaintiff must allege that a defendant acted with deliberate indifference to an excessive risk to his health or safety. *J.K.J. v. Polk County*, 960 F.3d 967, 376 (7th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t would be an understatement" to say that sexually assaulting inmates "objectively impose[s] serious risk to their safety." *Id.* Accordingly, Moore may proceed on a deliberate indifference claim against Dr. Murphy based on allegations that he unnecessarily groped his genitals and viewed his naked body during a physical examination.

Although a closer call, Moore also states a claim against Pelky and Cahak based on allegations that they refused to allow him to change doctors. It is not clear when or even if Moore informed them of Dr. Murphy's alleged misconduct, nor is it clear if an investigation cleared Dr. Murphy of wrongdoing before they denied his request (it appears that he is still working as a doctor at Redgranite). But construing Moore's allegations broadly, the Court can reasonably infer that Pelky and Cahak denied Moore's request to change doctors despite Moore informing them that he

3

was "terrified of Dr. Murphy" because of his prior contact with him. Forcing Moore to seek medical treatment from a doctor he has accused of sexual misconduct could violate the Eighth Amendment's proscription against cruel and unusual punishment. *See Beal v. Foster*, 803 F.3d 356, 257-58 (7th Cir. 2015) ("the alleged pain sufficient to constitute cruel punishment may be physical or psychological") (quoting *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (cleaned up)).

Moore does not, however, state a claim against Pelky or Cahak based on allegations that they "hire[ed] people with bad backgrounds." Dkt. No. 1 at 4. Moore does not explain what he means by "bad backgrounds," nor can the Court reasonably infer that Pelky or Cahak had any responsibility for hiring doctors employed by the Department of Corrections. Further, the doctrine of *respondeat superior* cannot be used to hold a supervisor liable for the misconduct of a subordinate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The only time a supervisor will be held liable for a subordinate's misconduct is if the supervisor directs or consents to the misconduct. For example, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye" for fear of what they might see. *Id*. (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988)). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones*, 856 F.2d at 992. The complaint includes no factual allegations suggesting that Pelky or Cahak had reason to know that Dr. Murphy would engage in the alleged misconduct, and the mere fact that they held supervisory positions is insufficient to state a claim against them under §1983.

Nor does Moore state a claim against Julie Ludwig. Although he names her in the caption of his complaint, he includes no allegations explaining what she did or did not do to violate his rights. Section 1983 requires that an individual be personally involved in the alleged constitutional

4

violation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). This means that a plaintiff must include allegations that connect the person he is suing to the alleged misconduct. *Id*. Moore fails to do this with regard to Ludwig, so he fails to state a claim against her.

Finally, Moore asserts that "all of these staff member[s] work for the Department Of Corrections." Dkt. No. 1 at 2. But, as explained above, the doctrine of *respondeat superior* does not apply in §1983 actions. And, in any event, the Supreme Court has explained that "neither a State nor its officials acting in their official capacities are 'persons' under §1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). As such, because Moore may not proceed on a claim for damages against the Department of Corrections, which is an arm of the State of Wisconsin, it must be dismissed from this action.

**IT IS THEREFORE ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Moore's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Patrick J. Murphy, Kelly Pelky, and Brian Cahak.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Patrick J. Murphy, Kelly Pelky, and Brian Cahak shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the Department of Corrections and Julie Ludwig be **DISMISSED** from this action because the complaint fails to state a claim against them upon which relief can be granted.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

5

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Moore is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Moore may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin this __21st__ day of November, 2024.

_Stephen C. Dries_
Stephen C. Dries
United States Magistrate Judge